# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEBRA BUTLER PATTERSON, )
)
    Plaintiff, )
) **MEMORANDUM OPINION**
v. ) **AND RECOMMENDATION**
)
MICHAEL J. ASTRUE, ) 1:08CV188
Commissioner of Social Security, )
)
    Defendant. )

    Plaintiff, Debra Butler Patterson, brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

    Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on January 24, 2005 (protective filing date, January 12, 2005), with an alleged onset of disability (AOD) of April 15, 2001. Tr. 38, 66. The applications were denied initially and upon reconsideration. Tr. 27,

---

[1] The documents associated with Plaintiff's SSI application are missing from the transcript.

34. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 37. Present at the hearing, held on June 28, 2007, were Plaintiff and her attorney. Tr. 276.

By decision dated August 27, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 13. On November 9, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 5, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since April 15, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
> . . .
>
> 3. The claimant has the following severe impairments: spondylosis of the thoracic and lumbar spine, degenerative changes of the left acromioclavicular joint, and she is status post arthroscopic surgery to her left shoulder (20 CFR 404.1520(c) and 416.920(c)).

Tr. 15. He continued:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

2

> 5. After careful consideration of the entire record, I find that the claimant has the exertional residual functional capacity to sit a total of 6 out of 8 hours, stand/walk a total of 6 out of 8 hours, and lift/carry 10 pounds frequently and 20 pounds occasionally. I further find she is restricted against climbing and work at heights or around hazardous machinery. She has no mental limitations.

Tr. 16-17. As a result of the ALJ's residual functional capacity (RFC) finding, he determined that Plaintiff was able to perform her past relevant work. Consequently, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from her AOD through the date of his decision. Tr. 20 (citing 20 C.F.R. §§ 404.1520(f) and 416.920(f)).

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ erred in his assessments of her credibility, her caregiver's opinion, and her RFC. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

---

[3] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

1. Credibility

Plaintiff contends that the ALJ erred in finding her "statements concerning the intensity, persistence and limiting effects" of her alleged symptoms to be "not entirely credible." Tr. 18. Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the

5

credibility of the severity of the subjective complaints.  See also section 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

In Plaintiff's case, the ALJ found at step one that Plaintiff had impairments capable of producing the symptoms that she alleged. Tr. 18.  At step two, however, the ALJ concluded that Plaintiff's allegations about her actual symptoms were less than credible.  In performing the credibility assessment, he utilized the factors in section 404.1529(c), as instructed by Social Security Ruling 96-7p, 61 Fed. Reg. at 34485, to the extent that they applied:

• "[D]aily activities":  The ALJ cited to Plaintiff's testimony that she prepared breakfast, washed dishes, walked, read, and watched television.  Tr. 18; see also Tr. 291-92.  She made sure that her invalid father, with whom she lived, took his medications and tested his blood sugar.  Plaintiff weekly went out with a niece and nephew, and occasionally visited with an uncle.

The ALJ also, however, pointed to Plaintiff's other recitations of her activities of daily living.  See Tr. 18.  In her SSA "Function Report," Plaintiff wrote that, on a daily basis, she visited with her mother, cleaned the kitchen, and perhaps grocery shopped. Tr. 69.  She cooked a "complete meal" once or twice a week, but did not "cook much" because she did not have a big appetite. Tr. 71.  Plaintiff was able to do general housecleaning and laundry.  If the weather was nice, she would go outdoors twice during the day.  Tr. 72.  Plaintiff generally went shopping twice a week.  She added that she visited by phone on a daily basis, and she regularly

6

visited with her sister and brother, in addition to her mother. Tr. 73. Indeed, she went out daily. Cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that pattern of claimant's routine activities, including reading, cooking, performing recommended exercises, doing laundry, attending church, cleaning house, washing dishes, doing laundry, and visiting, was inconsistent with plaintiff's complaints).

Plaintiff's recitation was almost as extensive when Dr. Edward Crane performed an initial psychological evaluation in January 2007.[4] Cf. SSR 96-7p, 61 Fed. Reg. at 34487 (noting that consistency of a claimant's statements, particularly statements made to treating or examining medical sources, provides strong indication of individual's credibility). Dr. Crane described Plaintiff's lifestyle as "moderately active." Tr. 218. He wrote:

> She does most of the cooking, cleaning, shopping, and so forth. She walks on a daily basis. . . . She has a niece and nephew that she gets out with occasionally for lunch and other restaurant meals. *Her pain is not preventing her from doing very much* but it does limit how much she enjoys things and the extent to which she can do things.

Id. (emphasis added).

In describing her functioning, Plaintiff told Dr. Crane that, in December 2005, her four-year relationship broke off. Tr. 219. She added that she sold antiques online. In his "Conclusions," Dr. Crane repeated that Plaintiff was "moderately active." Id. The court disagrees with Plaintiff that these recitations were "largely

---

[4] In her credibility argument, Plaintiff refers to the ALJ's discussion of her mental health, but the court notes that this discussion pertained to the severity of Plaintiff's impairments, see Tr. 16, not to Plaintiff's credibility.

7

identical" to her testimony, Pl.'s Br. at 8, and agrees with the ALJ that they describe more activities, Tr. 18.

- "The location, duration, frequency, and intensity of your pain or other symptoms": The ALJ noted Plaintiff's allegations of pain in her back, legs, left shoulder, and wrist, and that pain precludes her from sitting or standing for more than ten minutes at a time. Id.

- "Any measures you use or have used to relieve your pain": The ALJ noted Plaintiff's testimony that pain patches and hot baths helped to relieve her pain. Id. Cf. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). He added that Plaintiff did not begin to take prescription pain medication until October 2006 – some five and one-half years after her AOD.

Plaintiff explains that, because she did not have health insurance, she was unable to obtain prescription medication. See, e.g., Tr. 80, 264. SSA provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide[.]" SSR 96-7p, 61 Fed. Reg. at 34487. As the ALJ did not mention Plaintiff's inability to afford

8

Case 1:08-cv-00188-WO-WWD   Document 16   Filed 09/15/09   Page 8 of 20

medical care, he may not rely on this information in his assessment of Plaintiff's credibility.[5]

- "Other factors concerning your functional limitations and restrictions due to pain or other symptoms": The ALJ summarized Plaintiff's allegations that her pain prevented her from standing or sitting for more than ten minutes at a time, lifting, and using her left upper extremity for repetitive movements. Tr. 18. He also recalled that Plaintiff stated that she *quit* her last job in order to care for her dying sister, *not* because of her impairments. Id.; see also Tr. 131. Cf. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition."). And as discussed above, Plaintiff attested to a much wider range of activities than to which she testified.

- "Treatment, other than medication, you receive or have received for relief of your pain or other symptoms": The ALJ noted that Plaintiff's caregivers treated her back complaints conservatively, and none ever suggested surgical intervention. Tr. 19. Plaintiff argues that the ALJ failed to consider that she has reported back pain since 2001, which is supported by medical evidence, and that she consistently sought means by which to relieve the pain. But it is not enough that Plaintiff has

---

[5] Defendant counters that, prior to October 2006, Plaintiff was able otherwise to access medical treatment, yet Plaintiff's records demonstrate that she was also taking prescription medication during such time. See, e.g., Tr. 166, 206 (9/05, Plaintiff taking Vicodin); 178 (12/05, Plaintiff taking Percocet).

9

suffered from pain since her AOD; she must have been unable to engage in substantial gainful activity during the relevant period: "Disability requires more than mere inability to work without pain." Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir. 1989); Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Dumas v. Schweiker, 712 F.2d 1545, 1552 (2nd Cir. 1983). It is true that the ALJ did not detail *all* of Plaintiff's medical records, from her AOD through the time of his decision, but neither is he so required. See, e.g., Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005) ("The ALJ need not, however, provide a 'complete written evaluation of every piece of testimony and evidence.'"); accord Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ does not need to 'discuss every piece of evidence.'" (citation omitted)); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("an ALJ is not required to discuss all the evidence submitted").

That said, Plaintiff has failed to point out records that, by virtue of the ALJ failing to discuss them, he committed reversible error. The ALJ did acknowledge that Plaintiff "alleges disability due to disabling back pain since April 15, 2001." Tr. 18. In the court's review of Plaintiff's medical records, it encountered only *one* in all of 2001. See Tr. 115. And the ALJ could not possibly discuss Plaintiff's "persistent efforts to obtain relief from pain" from her AOD, Pl.'s Br. at 6, as *no such records exist from June 10, 2001, through at least June 22, 2005.*

Plaintiff sought help with chronic back pain on June 9, 2001. See Tr. 115. The transcript thereafter contains no records of *any* healthcare through Plaintiff's

10

SSA consultative examination by Dr. Mohammed Athar on March 1, 2005. See Tr. 130. It appears that Plaintiff thereafter established a treating relationship with Dr. Athar as, starting on June 23, 2005, there are a number of studies which were done under his authority, see Tr. 141-46, including a July 8, 2005, magnetic resonance imaging of Plaintiff's lumbar spine, see Tr. 164.

The citations in Plaintiff's brief implicitly acknowledge the extent to which she overreaches in making her argument. She cites to her June 2001 medical visit, and the next citations are not until October 2005, when she attended seven physical therapy sessions starting September 28. See Tr. 169-76. At the end of these sessions, Plaintiff's therapist remarked that she had "responded reasonably well" and had experienced "good relief," although her pain tended to return. Tr. 165. Plaintiff's overall range of motion remained only "slightly limited" at the end of the ranges. Id.

In addition, Plaintiff's citations support the ALJ's observation that her back pain treatment had been conservative. See Tr. 208 (prescribing medication and therapy); 209 (recommending pain management only); 240-41 (prescriptions, heat pads); 248 (medication refills). Plaintiff started monthly visits at a pain clinic in October 2006, where she was treated with medication and, over the course of nine months, two injections. See Tr. 224-34, 254. These records indicate that Plaintiff's pain usually ranged from three to five on a ten-point scale.

11

Moreover, some citations were not even to medical records of Plaintiff's back pain treatment. See Tr. 178 (shoulder therapy); 212 (letter only). Consequently, there is nothing in the records on which Plaintiff relies that renders the ALJ's conclusion unsupported. Cf. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ("'An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case.'" (citation omitted)); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Ruling 96-7p also advises the adjudicator to consider medical signs and laboratory findings; medical opinions provided by medical sources; and statements about the claimant's symptoms and their effect on the claimant's ability to work. 61 Fed. Reg. at 34486.

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

Craig, 76 F.3d at 595. See also SSR 96-7p, 61 Fed. Reg. at 34487 ("A report of negative findings from the application of medically acceptable clinical and laboratory

12

diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility.").

Accordingly, the ALJ pointed out that Plaintiff's studies revealed thoracic kyphosis,[6] spondylosis, osteoporotic changes of the thoracolumbar spine, and very slight facet arthropathy at two levels. Tr. 18. There was, however, no significant foraminal or canal stenosis. Plaintiff's physical examinations throughout were mostly benign, revealing some decreased range of motion but mostly tenderness and, on one occasion, decreased muscle strength in the lower extremities. See Tr. 166. Generally, Plaintiff exhibited normal muscle strength, reflexes, and sensation in her extremities. Tr. 19. Her gait was always normal and her straight leg raises were negative. Overall, the court finds that the ALJ has provided sufficient evidence to support his credibility finding.

2. Medical Source Opinion

Plaintiff mentions, in passing, that the ALJ erred in assessing Dr. Athar's note that "[t]his lady has back pain & has [shortness of breath]. She has applied for Disability & is unable to work." Tr. 139. But although the regulations require that all medical opinions in a case be considered, section 404.1527(b), Dr. Athar's statement is not a "medical opinion," i.e., an opinion "about the nature and severity of an individual's impairment(s)." SSR. 96-2p, 61 Fed. Reg. at 34490.

---

[6] "An anteriorly concave curvature of the vertebral column; the normal kyphoses of the thoracic and sacral regions are retained portions of the primary curvature (kyphosis) of the vertebral column." Stedman's Medical Dictionary 1036 (28th ed. 2006).

13

> [T]he value of a medical source's opinion is found in 'judgments about the nature and severity' of a claimant's impairments; a medical source's conclusions that a claimant is '"disabled" or `unable to work' " are "not give[n] any special significance" because such dispositive findings are reserved to the ALJ.

Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (citing section 404.1527(a)(2) and (e)(1),(3)). Dr. Athar's statement clearly addresses Plaintiff's ability to work rather than the "nature and severity" of her impairment. Accordingly, it is not required to be evaluated under section 404.1527, and is not due any special significance. See, e.g., SSR 96-2p, 61 Fed. Reg. at 34490 (providing that medical opinions "are the only opinions that may be entitled to controlling weight"). See also section 404.1527(e)(2) (the final responsibility for deciding RFC is reserved to the Commissioner).

Contrary to Plaintiff's allegations, the ALJ relied on substantial evidence to support his assessment, explaining that Dr. Athar failed to "provide justification for his conclusion" and "[t]he objective medical findings do not support his conclusion." Tr. 19. See section 404.1527(d) (providing that an opinion will be evaluated, inter alia, according to its supportability and its consistency with the record). Indeed, there are *no* medical records from Dr. Athar. Apparently, after her consultative examination, Plaintiff personally consulted Dr. Athar, as he wrote the subject note for her and had her undergo a number of studies. See Tr. 141-46. There are, however, no records from any visits Plaintiff may have had with the doctor, and the

note was written even before the studies were commenced. Further, as discussed above, the ALJ summarized the studies' findings, and they were minimal.

Nevertheless, Dr. Athar merely stated that Plaintiff was unable to work due to back pain and shortness of breath, and did not explain how Plaintiff was limited by her symptoms. In addition, as pointed out by the ALJ, "There is no medical evdience documenting an impairment causing shortness of breath." Tr. 19. Accordingly, the court finds no error in the ALJ's assessment of Dr. Athar's opinion.

3. RFC

Plaintiff also argues that the ALJ erred, when assessing her RFC, in failing to address her mental impairment. But the ALJ stated that Plaintiff alleged disability due to depression, and expressly found that Plaintiff's "depression does not result in significant limitation in her ability to perform basic work activities." Tr. 16. He elaborated by describing Plaintiff's psychological evaluation by Dr. Crane. See id. During her interview, Plaintiff "described a moderately active lifestyle." Id. Although the doctor noted her depressive symptoms, he described Plaintiff as quite "cooperative, pleasant, oriented," with logical and relevant thought content. Id.; see also Tr. 218.

Plaintiff complains that the ALJ failed to discuss the treatment notes from her psychologist, indeed, failed even to acknowledge their existence. See Tr. 16. These very same notes, however, in addition to Plaintiff's other records, fail to indicate that Plaintiff's depression produced symptoms that in any way affected her capacity to

15

perform work-related mental activities.  Although it is the duty of the fact finder to determine the RFC, see section 404.1546, the disability claimant must shoulder the burden of *proving* his RFC:  "*You* must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled," Section 404.1512(c) (emphasis added).  See also Section 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your [RFC].").

As also explained by SSA, the RFC assessment is "concerned with the impact of a disease process or injury on the individual."  SSR 96-8p, 61 Fed. Reg. 34474-01, 34475.  Cf. Sullivan v. Zebley, 493 U.S. 521, 528 (1990) ("The statute generally defines 'disability' in terms of an individualized, functional inquiry into the effect of medical problems on a person's ability to work." (citation omitted)).  This burden also falls on the claimant:  "*You* must provide evidence, without redaction, showing how your impairment(s) *affects your functioning* during the time you say that you are disabled[.]" Section 404.1512(c) (emphases added).

Thus, Plaintiff must have produced evidence which shows "the extent to which [her] medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect [her] capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. at 34475 (defining RFC).  The "mental activities" to be affected include understanding, carrying out, and remembering simple instructions; use of judgment;

16

responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Section 404.1521(b)(3)-(6). Plaintiff's records, including from her visits with Dr. Crane, do not provide this evidence.

Contrary to Plaintiff's testimony that she sometimes saw her psychologist[7] "every two weeks," Tr. 284, in fact, she saw Dr. Crane only twice after her initial evaluation: some seven weeks later, on February 27 and, next, over two months thereafter, on May 9, 2007. See Tr. 221-22. In neither of these records does Dr. Crane indicate that Plaintiff's depression (or mood disorder, as he diagnosed her on May 9) impacts her ability to perform mental work activities.

Further, Plaintiff's other medical records fail to indicate that her mental state limited her mental functioning. There are no mental health complaints or observations in the records through Plaintiff's application date. Plaintiff answered that she had never sought mental health treatment. Tr. 63. In her Function Report, Plaintiff replied that she had no problems with memory, understanding, concentration, following instructions, or getting along with others. Tr. 74.

In March 2005, Dr. Athar described Plaintiff as alert, oriented, and cooperative. Tr. 134. He blamed her inability to work on back pain and shortness of breath, and did not mention any mental limitations. See Tr. 139. Not until November 2005, at Plaintiff's first visit with Dr. Gabriel Fernandez, did she complain,

---

[7] Dr. Crane identifies himself as a Doctor of Education. See Tr. 218.

inter alia, of crying spells. Tr. 236. His diagnoses included depression and he prescribed Cymbalta. Tr. 237. Yet when Plaintiff sought care in December, she answered "No" to a history of depression. Tr. 264. The doctor observed that Plaintiff's psychiatric state was "intact to observation." Tr. 266.

When Plaintiff returned to Dr. Fernandez, in January 2006, she described the Cymbalta as "very helpful." Tr. 239. Unfortunately, she could not afford it and was denied assistance in obtaining it. See Tr. 239-40. Its absence, however, was not demonstrably detrimental to Plaintiff; she did not complain of either depression or mental health symptoms through her evaluation by Dr. Crane *one year later*. See, e.g., Tr. 242-48. In August 2006, Plaintiff reported to Dr. Fernandez no anxiety, depression, hallucinations, or forgetfulness; the doctor did not diagnose Plaintiff with a mental impairment. Tr. 246-47.

In October 2006, Plaintiff entered into pain management treatment with Dr. David Kishbaugh. He found Plaintiff to be alert and oriented, and her mood and affect to be appropriate. Tr. 224. These observations were repeated throughout Plaintiff's treatment records, the last dated just one month prior to the hearing. See Tr. 226-34. It was Dr. Kishbaugh's plan to refer Plaintiff to "pain psychology." Tr. 224.

Contrary to Plaintiff's allegation, the court finds that the ALJ made specific findings as to her mental abilities and supported each with citation to specific evidence. See Tr. 16. Based on Dr. Crane's report, the ALJ found that Plaintiff had

18

no more than mild restriction in her activities of daily living as exemplified by her care of her ailing father, and in maintaining social functioning, as shown by her dining in restaurants with relatives and relating well to Dr. Crane. The ALJ concluded that Plaintiff had no more than mild restriction in maintaining concentration, persistence, and pace, as seen in her ability to manage her father's medication schedule and use a computer to sell items online. Further, Plaintiff remained focused and attentive throughout Dr. Crane's examination. The court thus finds that, even if the ALJ had considered Dr. Crane's records from February 27 and May 9, he would not have altered his RFC finding.[8]

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (docket no. 11)

---

[8] Plaintiff also alleges that the ALJ failed to address the impact of her chronic pain, but that issue is dealt with in the credibility discussion.

seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (docket no. 14) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

                                                */s/*
                                      WALLACE W. DIXON
                                      United States Magistrate Judge

September 14, 2009